## Wallace *versus* Hussey *et al.*

1. Hays sold land to Wallace, who gave a mortgage for the purchase-money. A balance being unpaid, Wallace offered to pay on condition that Hays would assign it to Nixon. Hays refused, and issued a sci. fa., which Wallace defended on the ground of misrepresentation as to the land. *Held*, that evidence by Hays was admissible that at the time of the offer of payment Wallace made no objection on the ground of set-off, or that the whole balance was not due.

2. Prior to the sale by Hays, he issued a pamphlet, containing a description of the property, of which he made no other representations. *Held*, that this was in the nature of an advertisement, and not like a representation of fact made directly to a purchaser.

3. Hays agreed that the payment of the mortgage should be postponed for eighteen months after it became due. *Held*, that this was not within the act forbidding the issuing of a sci. fa. for a year after the mortgage was due.

4. The agreement was a covenant not to sue, but was no part of the mortgage.

October 26th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Westmoreland county* : Of October and November Term 1869, No. 11.

In the court below Curtis G. Hussey, William B. Hays and Thomas Mellon, on the 8th of December 1866, issued a scire facias sur mortgage against Henry E. Wallace.

The case was tried, November 19th 1868, before Buffington, P. J. The plaintiffs gave in evidence a mortgage from the defendant to them, dated December 19th 1864, to secure the payment of $100,000 on the 19th of March 1865, on a tract of land, known as the Shafton Coal Works; $75,000 of the mortgage had been paid on the 6th of April 1865. The defendant gave evidence by W. O. Leslie that under a power of attorney from the plaintiffs he sold the property covered by the mortgage to the defendant and others for $150,000; it was situated on the Pennsylvania Railroad in Westmoreland county, between Greensburg and Irwin station, and about 20 miles east from Pittsburg; the defendant resided in Philadelphia; at the time of negotiating the sale, witness gave to

[Wallace *v.* Hussey.]

the purchasers a pamphlet containing a schedule and description of the property, but gave no description of the property to the buyers other than was in the power of attorney and pamphlet. The title of the pamphlet was: "Shafton Coal Mines and Lime Works * * * situate, &c., * * comprising the following property."

The schedule following contained a detailed statement of the property in items describing their condition with a value in dollars, to each; the whole estimate amounting to $254,680.

The conclusion was as follows :—

"We would invite attention to this property, and especially a personal examination of it, as we think a personal examination would make a more favorable impression of its advantages than anything we could say on the subject. These mines are now in operation. Their working can be inspected any day; and it will be seen that, with slight outlay, they can be made to pay a very handsome monthly dividend at once.

"WM. B. HAYS & Co., Pittsburg, Pa.

"Parties negotiating for purchase are required to examine the foregoing schedule and statement, and exercise their own judgment as to its correctness."

Before and at the time the deed was delivered, $50,000 of the purchase-money were paid, and $100,000 the remainder secured on the property by the mortgage in suit. The purchasers were afterwards incorporated as The Shafton Coal Company. The defendant further gave in evidence a receipt of Hays, one of the plaintiffs, for $75,000 on account of the mortgage, balance to be paid July 1st 1865 with interest from the 10th of April; also an agreement dated May 5th 1865 between the plaintiffs and "the Shafton Coal Company and Henry E. Wallace, mortgagor," stipulating that the balance of $25,000 of the mortgage-debt remaining unpaid "shall not be payable for the term of eighteen months from the 1st day of May 1865, interest being paid thereon at the lawful rate, every six months, and that no process shall issue upon the said indenture of mortgage, or the bond and warrant accompanying the same, until the expiration of the said term of eighteen months."

He also gave evidence for the purpose of showing that the mines, buildings, machinery, &c., of the property sold to him had been misrepresented in the pamphlet and schedule, and were inferior to the description there given.

The plaintiffs in rebuttal gave evidence as to the value of the property, the condition of the mines, machinery, &c. They proposed to prove that "on the 3d December 1866 Henry E. Wallace, defendant, met Mr. Hays at the office of H. C. Marchand, and offered to pay to Mr. Hays the balance due on the mortgage, if he would assign a portion of the mortgage to Mr. Nixon; Mr. Hays

[Wallace *v.* Hussey.]

declined to receive it on the terms proposed." The defendant objected to the evidence as being to prove an offer of compromise not accepted. The evidence was received, and a bill of exceptions sealed.

Mr. Marchand testified, " 3d December 1866, Wallace and Hays met in my office; Mr. Wallace proposed to pay the balance, $25,000, and interest, on condition that he, Hays, would transfer a certain portion to Mr. Nixon, president of the company; this Mr. Hays refused to do; no set-off, objection, or any defence to any portion of the unpaid amount due on mortgage, was made by Mr. Wallace at the time. I was present on 6th April 1865, when the $75,000 were paid to Mr. Hays; Messrs. Nixon, Wallace and DeHaven were present; Nixon produced the certificate delivered to Mr. Hays, and he signed receipt and duplicate; no talk about any off-set in payment of this money."

The defendant requested the court to charge :—

" 1. That the sale of the real and personal property in this case being made in Philadelphia, when the vendors had no opportunity to inspect the same, and the vendors having furnished them a printed description of the same, with the values attached to the various items; then if the jury believe that this statement or description is not true, in whole or in part, and that the vendors knew it was not true at the time, they were guilty of a fraudulent misrepresentation to the purchasers, and the jury may set off the damages the latter sustained on account of the property not being as described, against the purchase-money claimed here.

" 2. That from the printed description furnished by the plaintiffs the defendant had a right to believe the property was in good repair, and in reasonable good working order; that it could do the work the description asserted it could do, and that, therefore, if the jury believe that it was not in such repair, or working order, and could not do the work according to the description, the measure of the defendant's damages would be the amount necessarily expended by him in order to repair and make it do so.

" 3. This scire facias having issued within one year from the time when the money became due, which the mortgage was given to secure, it is premature, and the plaintiff cannot recover.

" 4. That no presumption arises from the silence of the defendant at the instant of time when the payment on the mortgage was made or offered to be made that he had no defence to the payment, or did not intend to make any, he was not bound to make objections at that time more than at another."

The court answered :—

" 1. This point is answered in the affirmative, with these explanations :

" As a general principle there is no implied warranty of quality in the sale of personal property, even a full price does not neces-

[Wallace v. Hussey.]

sarily insure a sound article, especially when it is open to the inspection and examination of the purchaser. If a person wants to be secure in getting personal property of a certain specified quality of which he has the opportunity of judging, he may demand a warranty or refuse to purchase; but if he has the means of reasonably ascertaining the character of the articles, and buys without any warranty, or assurance, he has no remedy; he has made his own payment the ground of his bargain and must be content. If, however, he is not in a condition or situation to judge of its quality, not being within reasonable access, of which the jury will judge, and he buys upon the faith of the vendor's representations alone, these representations must not be false and fraudulent. If the vendor, under such circumstances, falsely represents the quality of the property, with a knowledge of the facts of such falsity, and with the fraudulent purpose of deceiving and cheating purchasers, he may be indemnified against such fraud, by a reduction in the price to the standard of the real value. This fraud must be proved to the satisfaction of the jury, and cannot be presumed on slight grounds. As in this case, if the jury believe that the property was not within the reasonable reach or power of the purchasers to examine it, and he bought on the faith of the plaintiff's representation, the plaintiff was bound to deal fairly, and if he misrepresented the quality, knowing the fact that his representations were false, and so represented and so representing, with a fraudulent intent to deceive the purchaser, then he would be entitled to a reduction of the amount the property lacked to come up to the representations of its quality and value.

"2. The point is answered in the negative, unless the jury believe there was such fraud as mentioned in our answer to the 1st point, the mere representation and purchase in pursuance of this, unless so false and fraudulent, and known to be such by the vendor, would not afford any ground of complaint.

"3. This point is answered in the negative, as the scire facias was not issued till after twelve months from the time of the payment mentioned in the mortgage, and, although the time of payment was by a subsequent agreement extended, that contract was not part of the mortgage, and not within the Act of Assembly.

"4. This point is answered in the negative. If the $75,000 were paid, and the $25,000 offered upon conditions and no objection made to the quality of the property sold, some presumptions would arise, but, being only a presumption, it may be rebutted."

The verdict was for the plaintiffs for $28,833.33.

The defendant took a writ of error, and assigned for error the admission of Mr. Marchand's testimony and the answers to the points.

*G. D. Budd* (with whom were *J. A. Hunter* and *E. Cowan*),

[Wallace v. Hussey.]

for plaintiff in error.—As to the evidence, cited Slocum v. Perkins, 3 S. & R. 296; Sailor v. Hertzogg, 2 Barr 186; Thomas v. Brady, 10 Id. 168. As to misrepresentation of the quality of the property: Fisher v. Worrall, 5 W. & S. 478; Pennock v. Tilford, 5 Harris 456; Miles v. Stevens, 3 Barr 21; Horbach v. Gray, 8 Watts 497; Goepp's Appeal, 3 Harris 428; Cochran v. Cummings, 4 Dallas 250; Duncan v. McCullough, 4 S. & R. 487; Borrekins v. Bevan, 3 Rawle 23; Hogens v. Plympton, 11 Pick. 97; Hastings v. Lovering, 2 Pick. 214; Osgood v. Lewis, 2 Har. & Gill 495; Hunt v. Moore, 2 Barr 105; Haycraft v. Creasy, 2 East 103; Moens v. Heyworth, 10 M. & W. 155; Fitzherbert v. Mather, 1 T. R. 15; Addison on Contr. 127; Schneider v. Heath, 3 Campb. 508; Pawson v. Watson, Cowp. 788; Adamson v. Jarvis, 4 Bing. 73; Bishop v. Reed, 3 W. & S. 265; Risney v. Selby, 1 Salk. 211; Mummery v. Paul, 1 C. B. 316; Taylor v. Green, 8 C. & P. 319; Grant v. Munt, Cooper's Chan. 6, 173; Callem v. Blantern, 2 Wilson 347; Davis v. Symonds, 1 Cox 405; Holmes v. Sixsmith, 7 Excheq. 807; Schneider v. Heath, 3 Campb. 508; Fletcher v. Bowsher, 2 Starkie 561; Baglehole v. Walters, 3 Campb. 155. As to the premature issue of scire facias: Walker v. Tracy, 1 Phil. R. 225.

*H. D. Foster* (with whom were *H. C. & J. A. Marchand*), for defendants in error, cited: As to the evidence: Sailor v. Hertzogg, *supra;* Wallace v. Small, 1 M. & M. 446; Watts v. Lawson, Id. 447; Thompson v. Austen, 2 Dowl. & Ry. 358; Slack v. Buchanan, Peake's Cases 5, 6. As to issuing scire facias: Partridge v. Partridge, 2 Wright 78. As to misrepresentation: Chitty on Contracts 528, 529; 1 Story's Eq. Jur. § 215–16; 2 Kent's Com. 484; Phipps v. Buckman, 6 Casey 402; Fisher v. Worrall, 5 W. & S. 478.

The opinion of the court was delivered, January 3d 1870, by
AGNEW, J.—We discover no error in admitting the testimony of Mr. Marchand. The offer was not of compromise, but of payment. It was to pay the balance of $25,000, owing upon the mortgage, without a claim of abatement, or an allegation of a want of consideration. Clearly this was an inferential admission that the defendants owed the whole sum. The condition on which the offer of payment was made, to wit, that Hays should assign this portion of the mortgage to Mr. Nixon, did not relieve the offer to pay the entire amount, from the presumption that it was all equitably due to Hays, without further explanation. It might be that the defendant was willing to pay a debt, part of which he considered unjust, on condition of his liability being transferred to another, and he might have good reasons for so doing, but this it was his business to explain. Certainly, as a primâ facie pre-

[Wallace *v.* Hussey.]

sumption, when he offered to pay to his creditors the whole sum without any claim of abatement, it was some evidence that he had no defence. How much, it was for the jury, not the court, to say.

The second and third assignments of error involve the doctrine of the vendor's liability for false representations of the quality of the property sold. The second is not insisted on, but the third is, on the ground that the second point of the defendants did not raise the question of fraud, but a misrepresentation of the quality of the property sold, innocently made it might be, but for which the vendor must answer in damages. But this question was not fairly raised by the evidence. There was no evidence given of any representations of the vendors except those contained in the pamphlet attached to Leslie's power of attorney. Now this was a document in the nature of an advertisement only, addressed to all persons who might feel inclined to buy, and inviting their attention to the property and its supposed advantages. It is not like a representation of a fact made directly to a purchaser in the act of negotiating a bargain ; but it is always looked upon with many grains of allowance for florid description, and as a mere invitation to bring in purchasers. But the pamphlet itself warned all persons desirous of purchasing not to rely upon its terms. After inviting a personal examination of the property, it concludes by saying—" Parties negotiating for purchase are required to examine the foregoing schedule and statement, and exercise their own judgment as to its correctness." Thus the defendants cannot say they were misled, for they were warned not to take the schedule and statement as true. If they did so, it was their own negligence, for it is only when the purchaser ought to rely on the vendor that he can be misled. And in this case there was no difficulty in the way of a personal examination. The property lay right upon the railroad and but half a day's ride from the residence of the purchasers. In view of the evidence, therefore, the court very properly submitted the case to the jury on the ground of a fraudulent misrepresentation only. For if the pamphlet was made by the vendors to play a part in a scheme of fraud, the invitation to examine the property and test the correctness of the description would not rescue it from the influence of the fraud. Indeed that seeming fairness would only assist to make the fraud more effective.

We are of opinion that the agreement of May 5th 1865, postponing the payment of the balance unpaid on the mortgage for eighteen months, did not bring the case within the Act of Assembly forbidding a scire facias to issue on the mortgage until the expiration of one year after the last instalment fell due. This agreement amounted to a covenant not to sue on the mortgage until the expiration of eighteen months, but was no part of the

[Wallace *v.* Hussey.]

mortgage.   It was a new credit for a new consideration, and the covenant that no process should issue on the mortgage until the expiration of the new period, fixed the time when process should issue.   This was the final agreement of the parties, quite as binding and far more  reasonable than a waiver of the legal period (a common clause in mortgages) and an agreement that a scire facias shall issue as soon as the debt becomes payable.

The fifth assignment of error needs no more elucidation, than what has been said upon the first assignment.

Finding no error in the record, the judgment is affirmed.